UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| DEBORAH AMAYA on behalf of D.V.A., a minor,<br><br>           Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Commissioner of Social Security,<br><br>           Defendant. | Case No. EDCV 15-01525 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff's mother and guardian ad litem filed this action on plaintiff's behalf seeking reversal of the decision of defendant, the Commissioner of Social Security (the "Commissioner"), denying plaintiff's application for child's supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are summarized in the Joint Stipulation. [JS 2-3]. Plaintiff began receiving child's SSI benefits in 2005 following the Commissioner's decision that plaintiff was disabled under section 111.09A of the Listing of Impairments (the "listing"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1. [JS 2; see Administrative Record ("AR") 21, 546].

On February 19, 2010, the Commissioner reviewed plaintiff's disability status and found that he was

no longer disabled as of February 1, 2010. [JS 2]. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), who terminated benefits on the ground that plaintiff's disability ended due to medical improvement as of February 1, 2010. [JS 2; AR 15-32]. The Appeals Council denied plaintiff's request for review. [AR 1-4]. Plaintiff filed an action for judicial review, which resulted in a stipulated order for voluntary remand for further administrative proceedings . [JS 2; see AR 643-648]. On remand, a different ALJ conducted three new hearings. On March 30, 2015, the ALJ issued a final written hearing decision finding plaintiff not disabled as of February 1, 2010. [AR 542-559]. This action followed.

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

A child under the age of 18 is disabled within the meaning of the Social Security Act "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §1382c(a)(3)(C)(i) (as amended); see 20 C.F.R. § 416.906; see Merrill ex rel. Merrill v. Apfel, 224 F.3d 1083, 1085 (9th Cir. 2000) (citing section 1382c(a)(3)(C)(i)). The regulations governing the evaluation of childhood disability provide that "if the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed

impairment, the child is not disabled." Brown v. Callahan, 120 F.3d 1133, 1135 (10th Cir. 1997) (citing 20 C.F.R. § 416.928 (a)); see 20 C.F.R. §§ 416.902, 416.906, 416.924-416.926a (regulations concerning childhood disability standards).

To meet a listed impairment, a claimant must show that his or her impairment "meet[s] all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990); see Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). To medically "equal" a listed impairment, a claimant must present medical findings at least equal in severity and duration to all of the criteria for the most similar listed impairment. See Sullivan, 493 U.S. at 531; Tackett, 180 F.3d at 1099-1100; 20 C.F.R. § 416.926 (discussing medical equivalence for adults and children).

If a child disability claimant does not have an impairment or combination of impairments that meets or medically equals any listing, the ALJ must consider whether it "functionally equals" a listed impairment. 20 C.F.R. §§ 416.924(a), 416.926a. "Functional equivalence" is determined not by reference to the criteria for any particular listed impairment, but by reviewing all relevant information in the case record, including information from a broad range of medical sources and nonmedical sources, to assess the child's functioning in six areas, which are referred to as "domains." See 20 C.F.R. § 416.926a. The six domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). An impairment or combination of impairments functionally equals the listing if, applying criteria detailed in the Commissioner's regulations, it results in "marked" limitations in two domains or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a),(e)(l).

In determining whether a child's disability continues or has ended, the Commissioner employs a three-step evaluation process. The first step asks whether there has been medical improvement, as the Commissioner defines that term, in the impairment or combination of impairments that formed the basis of the most recent favorable determination or decision.[1] If there has been no medical improvement in the CPD

---

[1] The Commissioner "refer[s] to the most recent favorable determination or decision as the "comparison point decision" ("CPD"), and to the impairment or combination of impairments that was present at the time of CPD as the "CPD impairment(s)." SSR 05-03p, 2005 WL 6491605, at

1 impairment(s), the child's disability continues, unless a specified exception applies. If there has been
2 medical improvement in the CPD impairment(s), the Commissioner considers whether the CPD
3 impairment(s) still meets, medically equals, or functionally equals the severity of the listed impairment that
4 it met or equaled at the time of the CPD. If so, the child is still disabled, unless a specified exception applies;
5 if not, the inquiry proceeds to the third step, which asks whether the child's current impairment or
6 combination of impairments is disabling under the childhood disability standard, that is, whether the child
7 currently has a severe impairment or combination of impairments that meets, medically equals, or
8 functionally equals a listed impairment. See 20 C.F.R. § 416.994a(a)-(b); SSR 05-03p, 2005 WL 6491605;
9 Marquez ex rel. A.N.M. v. Astrue, 2012 WL 5457472, at *2 (C.D. Cal. Nov. 8, 2012).

The ALJ found that the CPD was the Commissioner's July 11, 2005 decision finding plaintiff disabled on the grounds that he met section 111.09A of the listing due to the severe, medically determinable impairments of "mental retardation" and "speech/hearing delay." [AR 546]. Section 111.09 concerns a "[c]ommunication impairment, associated with documented neurological disorder and one of the following:"

    A. Documented speech deficit that significantly affects (see 111.00K1) the clarity and content of the speech; or

    B. Documented comprehension deficit resulting in ineffective verbal communication (see 111.00K2) for age; or

    C. Impairment of hearing as described under the criteria in 102.10 or 102.11.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 111.09.[2]

---

*1.

[2] Although the ALJ found that one of plaintiff's CPD impairments was "speech/hearing delay," neither a hearing delay nor any other type of hearing impairment is a component of section 111.09A. Only section 111.09C has a hearing impairment as a component of the listing. The ALJ implicitly acknowledged that section 111.09A does not involve hearing problems when she wrote: "In order to meet listing 111.09A, the claimant must suffer from a communication impairment with documented *speech* deficit which significantly affects the clarity and content of the speech." [AR 547 (italics added)]. Outside of the phrase "speech/hearing delay," the ALJ's decision makes no mention of a hearing delay or hearing impairment in existence at the time of the CPD. In addition, the ALJ expressly found that plaintiff "did not have any impairment at the CPD that was not considered at that time" and "has not developed any additional impairments subsequent to the CPD." [AR 558]. Therefore, it is reasonable to infer that plaintiff's CPD impairments were "mental

The ALJ found that medical improvement in plaintiff's CPD impairment occurred as of February 1, 2010 because plaintiff's "speech and language capabilities" had progressed and he had "increased intellectual functioning. [AR 546-547]. Next, the ALJ found that the CPD impairments had not met, medically equaled, or functionally equaled section 111.09A of the listing since that date. [AR 546-547]. Additionally, the ALJ found that the plaintiff had not had any other impairment or combination of impairments that met, medically equaled, or functionally equaled a listed impairment since February 1, 2010. [AR 558-559]. Accordingly, the ALJ concluded that plaintiff's disability ended as of February 1, 2010. [St 559].

Plaintiff contends that the ALJ committed reversible legal error by failing to consult a medical expert with specialization in the fields of pediatrics or speech pathology to evaluate the record in plaintiff's case in its entirety. [JS 4-12, 22-26].

The Social Security Act states:

> In making any determination under this title . . . with respect to the disability of an individual who has not attained the age of 18 years . . ., the Commissioner of Social Security shall make reasonable efforts to ensure that a qualified pediatrician or other individual who specializes in a field of medicine appropriate to the disability of the individual (as determined by the Commissioner of Social Security) evaluates the case of such individual.

42 U.S.C. § 1382c(a)(3)(I).

The Ninth Circuit has interpreted section 1382c(a)(3)(I) "to mean that the ALJ is required to make a reasonable effort to obtain a case evaluation, based on the record in its entirety, from a pediatrician or other appropriate specialist, rather than simply constructing his own case evaluation from the evidence in the record." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1014 (9th Cir. 2003) (footnote omitted). In Howard, the Ninth Circuit held that although substantial evidence in the record supported the ALJ's nondisability decision, the ALJ committed reversible legal error because he "failed to rely on a 'case' evaluation. Rather, he only relied on the separate specialists' individual evaluations and reports, which

---

retardation" and "speech delay," but not "hearing delay." See Magallanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) (stating that a reviewing court may draw "specific and legitimate inferences from the ALJ's opinion" if such inferences "are there to be drawn").

pertained to each of their individual specialities. The ALJ made no effort to have [the claimant's] case evaluated in its entirety." Howard, 341 F.3d at 1014.

The Commissioner subsequently issued Social Security Acquiescence Ruling ("SSAR") 04–1(9), 2004 WL 5846720, 69 Fed.Reg. 22578 (Apr. 26, 2004). SSAR 04-1(9) states that under Howard, an ALJ may rely on a "case evaluation made by a State agency medical or psychological consultant that is already in the record" or "the testimony of a medical expert." 69 Fed.Reg. at 22580. "When the ALJ relies on the case evaluation made by a State agency medical or psychological consultant, the record must include the evidence of the [consultant's] qualifications," and the ALJ "must ensure that the decision explains how the . . . consultant's evaluation was considered." 69 Fed.Reg. at 22580. Acquiescence rulings are binding on all components of the Social Security Administration. See 20 C.F.R. § 402.35(b)(1)-(2); Pinto v. Massanari, 249 F.3d 840, 844 n.3 (9th Cir. 2001).

On remand, defendant was directed to update the treatment evidence on plaintiff's medical conditions and further evaluate plaintiff's disability. [AR 542, 644-645]. During the January 23, 2014 hearing, the ALJ heard testimony from plaintiff's mother and from a medical expert, David Glassmire, Ph.D, a licensed clinical psychologist. [AR 565-585]. During the second hearing, on November 5, 2014, no testimony was taken, and plaintiff's mother was given additional time to retain a new attorney. [AR 586-592]. Prior to the third hearing, plaintiff's mother submitted additional evidence from plaintiff's school records. [AR 597]. Plaintiff was not present during the third hearing, on February 18, 2015; however, plaintiff's mother and Dr. Glassmire testified again. [AR 593-606]. Plaintiff was represented by counsel at the first of those hearings but was unrepresented during the remaining two hearings. [See AR 543, 565-585, 586-592, 593-606].

During the January 2014 hearing, Dr. Glassmire testified that from February 2010 through the hearing date, plaintiff's only medically determinable impairment was borderline intellectual functioning, and that the relevant listed impairment was section 112.05 of the listing, which describes an intellectual disorder manifested by subaverage general intellectual functioning and significant deficits in adaptive functioning. Dr. Glassmire opined that plaintiff did not have deficits in adaptive functioning that met, medically equaled, or functionally equaled section 112.05. [See AR 573-578]. Dr. Glassmire testified that plaintiff also had a "speech and language impairment" that "primarily impact[ed]" his performance on

verbal intellectual performance measures by "pushing . . . down" his scores but was not a separate, medically determinable impairment. [AR 573-574]. Dr. Glassmire testified that at the time of the CPD, plaintiff's

> performances on testing were so significantly impacted by his language functioning that his IQ test came out in a range that actually qualified him for special education under the mental retardation category. That I believe was an inaccurate reason to qualify him for special education because the subsequent testing shows that really in the language functioning back then was what lowered the test scores so low, and his actual intellectual abilities are likely in the low average to average range.

[AR 577]. Dr. Glassmire opined that plaintiff had exhibited "significant improvement" from the comparison point" in his intellectual functioning based on IQ scales and other measures, explaining that "even on language based intellectual measures [plaintiff's] performances are up in the borderline range and on the non-verbal measures his intellectual performances are up in the average to low average range." [AR 573, 578]. Dr. Glassmire noted that speech problems were documented throughout the record, including problems with enunication, pronounciation, language delay, difficulty verbalizing, serious limitations in introducing and maintaining relevant and appropriate conversation, and that plaintiff had a diagnosis of "expressive receptive language disorder." [AR 574-577].

Plaintiff's counsel asked Dr. Glassmire to comment on a September 2013 "speech and language evaluation by a speech and language expert," Janet Campbell, M.A., who concluded that plaintiff "struggles to follow directions, has very severe expressive language disability, severe receptive language disability, [with] verbal abilities in a moderate to severe delayed disabled range." [AR 578-579; see AR 934-941]. Plaintiff's counsel told Dr. Glassmire that Ms. Campbell's report "seems to contradict some of the information about [plaintiff's] language being improved" since the CPD. [AR 579].

> Dr. Glassmire replied that he had not commented on that report because it was primarily a speech and language evaluation that falls completely out of my area of expertise, but it does overlap so I will comment on that. . . . During the . . . comparison point period [plaintiff's] speech and language skills were impacting the test scores to the point that he was performing in the mentally retarded range on IQ tests despite subsequent testing showing

7

|   |   |
|---|---|
| 1 | that he was likely in the average range intellectually. The more recent tests his scores have |
| 2 | jumped up . . . . So that was why I indicated that I think his speech and language abilities |
| 3 | have improved significantly in terms of how they're impacting his functioning. . . . [T]hat |
| 4 | doesn't mean that I'm saying that . . . he does not have any speech and language issues . . . |
| 5 | but I don't believe that they are at a level where it causes marked functional limitations in |
| 6 | his overall functioning. |

[AR 578-579].

During the February 2015 hearing, Dr. Glassmire testified that he had reviewed new records that he concluded were "consistent with [his] previous testimony." [AR 64-605]. Dr. Glassmire opined that plaintiff "has a [section] 112.05 condition, borderline intellectual functioning" and "also a speech and language impairment . . . which really doesn't fit cleanly in any psychological listings, but would best fit under [section] 112.05." [AR 603]. Dr. Glassmire opined that medical improvement had occurred and that plaintiff's impairments did not meet, medically equal, or functionally equal section 112.05. [AR 603-605].

In her hearing decision, the ALJ first inquired whether medical improvement occurred in plaintiff's CPD impairments of mental retardation and speech delay between the CPD date in 2005 and February 1, 2010, the date his disability was found to have ended. [See AR 546-547]. See 20 C.F.R. § 416.994a(a)-(b). The ALJ said that she relied on plaintiff's IEP (Individualized Eduction Program) dated February 7, 2015 to find that he had shown "progress in his speech and language capabilities" warranting a finding of medical improvement in his speech impairment. [AR 547]. The ALJ cited individual examination reports by Rosa Colonna, Ph.D., Jose Fuentes, Ph.D., and Charlene Krieg, Ph.D., to find that plaintiff's impairment of mental retardation had been "upgraded" to borderline intellectual functioning. [AR 547; see AR 339-345, 431-475, 942-948]. The ALJ did not cite Dr. Glassmire's testimony in making that finding.

Since the ALJ found that medical improvement occurred in plaintiff's CPD impairments, she proceeded to the second step of the inquiring whether, as of February 2010, plaintiff's mental retardation and speech delay still met, medically equaled, or functionally equaled their severity at the time of the CPD, notwithstanding the occurrence of medical improvement. The ALJ found that the CPD impairments did not meet, medically equal, or functionally equal the requirements of section 111.09A as of February 2010 because plaintiff "is understandable as is shown in the psychological and neuropsychological reports in the

file," citing, by way of example, Dr. Colonna's January 2010 psychological examination report. [AR 547]. The ALJ did not cite Dr. Glassmire's testimony in making that finding.

Having found that plaintiff's CPD impairments of mental retardation and speech delay were no longer disabling as of February 1, 2010, the ALJ next asked whether plaintiff had shown that he had any disabling impairment or combination of impairments since February 1, 2010. The ALJ found that since February 2010, plaintiff had been "delayed in his learning capabilities" and had a "learning disorder" because he had "deficits in auditory processing and language expression," with "overall difficulties in expressive language," and that his "primary difficulty is in the area of expressive language," but that he could talk to the consultative examiners and school professionals and had friends, so he was "not precluded from all communication with others" and had no impairment or combination of impairments that met, medically equaled, or functionally equaled a listed impairment since February 2010. [See AR 553-555]. In making that finding, the ALJ cited Dr. Glassmire's testimony along with individual reports and evaluations from state agency psychiatric consultants, consultative psychologists, a neuropsychologist, speech and language pathologists, a school psychologist, plaintiff's teachers, and plaintiff's mother. [AR 549-552].

There is merit to plaintiff's contention that the ALJ erred in relying on the testimony of Dr. Glassmire. Under Howard, the ALJ was "required to make a reasonable effort to obtain a case evaluation, based on the record in its entirety, from a pediatrician or other appropriate specialist, rather than simply constructing [her] own case evaluation from the evidence in the record." Howard, 341 F.3d at 1014 (footnote omitted). [See JS 4, 22].

In the circumstances of this case, the ALJ did not make a "reasonable effort" to ensure that a qualified pediatrician or other appropriate specialist conducted that case evaluation. A proper evaluation of plaintiff's case depended on a proper assessment of his speech impairment, which was one of plaintiff's two CPD impairments prior to February 1, 2010, and was also, according to the ALJ, his "*primary difficulty*" and the cause of his learning disorder and learning delays after February 1, 2010. [See AR 553, 554]. Dr. Glassmire was a licensed clinical psychologist, not a pediatrician. [AR 693]. His curriculum vitae describes extensive experience in clinical psychology, but does not indicate that he has any experience

in speech and language pathology. [AR 693]. In his testimony, Dr. Glassmire testified that he had not commented on a speech and language evaluation in the record because that evaluation "falls completely out of my area of expertise . . . " [AR 579]. Dr. Glassmire said that his testimony concerned how plaintiff's speech and language difficulties impacted his performance on IQ tests and other intellectual performance measures, which in turn affected plaintiff's overall functioning, but plaintiff's "speech delay" was a separate and distinct impairment under section 111.09A. Plaintiff's speech impairment was *not* subsumed by the finding that plaintiff had mental retardation, borderline intellectual functioning, or any other impairment in intellectual functioning, or nor by the finding that plaintiff did not manifest adaptive functional deficits as required by section 112.05, the only listed impairment Dr. Glassmire identified or discussed in his testimony. Unlike section 112.05, section 111.09A entails a "documented speech deficit that significantly affects . . . the clarity and content of the speech," as well as a documented neurological disorder. Because plaintiff had been found disabled under section 111.09A, the ALJ was obliged to make a properly supported finding that plaintiff was no longer disabled under that section before she could even consider whether section 112.05 applied. See 20 C.F.R. § 416.994a(a)-(b).

Given the importance of plaintiff's speech impairment, Dr. Glassmire's lack of expertise in the area of speech and language pathology means that he was not the appropriate specialist to conduct an evaluation of plaintiff's case in its entirety. That conclusion is supported by the Commissioner's regulations explaining how communication impairments are evaluated under section 111.09:

1. Communication impairments result from medically determinable *neurological disorders that cause dysfunction in the parts of the brain responsible for speech and language.* Under 111.09, we must have recent comprehensive evaluation *including all areas of affective and effective communication, performed by a qualified professional*, to document a communication impairment associated with a neurological disorder.

2. Under 111.09A, *we need documentation from a qualified professional that your neurological disorder has resulted in a speech deficit that significantly affects your ability to communicate.* Significantly affects means that you demonstrate a serious limitation in communicating, and a person who is unfamiliar with you cannot easily understand or

10

interpret your speech.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 111.00K (italics added).

Defendant argues that the January 2010 psychological evaluation from Dr. Rosa Colonna, Ph.D., is the type of "case evaluation" contemplated by Howard and AR 04–1(9). However, Dr. Colonna's report is a psychological evaluation issued on January 19, 2010. [AR 341-45]. It is not a case evaluation of the entire record as a whole, but rather a medical report based on Dr. Colonna's independent examination of plaintiff and the review of one document from plaintiff's school. [AR 324]. Since the record before the ALJ when she issued her March 2015 decision contained medical and testimonial evidence not included in, and even postdating, Dr. Colonna's evaluation, that evaluation is not "based on the record in its entirety," as Howard requires. [See AR 549-51]. See Howard, 341 F.3d at 1014 n.2 (noting that "[t]here is a distinction . . . between having an expert evaluate a claimant with respect to that expert's particular specialty, and having an expert evaluate a claimant's case in its entirety, considering all of the medical records . . . .").

The ALJ also took two Child Disability Evaluation forms into consideration, one from Dr. Morgan, dated February 16, 2016, and one from Dr. Brooks, dated May 10, 2010. [AR 549]. The title, form and content of these evaluations, generated by the state agency medical consultants, suggest that those reports might meet the "case evaluation" standard required by Howard and SSAR 04-1(9). However, as with Dr. Colonna's report, neither of those two case evaluations took post-2010 medical or testimonial evidence into account, and thus neither can be properly understood as encompassing the entire record. [See AR 346, 416, 549].

Further, the case evaluations from Drs. Morgan and Brooks do not include "evidence of the [consultants'] qualifications" other than the abbreviation "M.D." [AR 347, 417]. Likewise, the only description of Dr. Colonna's qualifications is the title "clinical psychologist." [AR 345]. Without a clear indication of a medical specialty in pediatrics or another "appropriate" area, this court cannot conclude that those evaluations are consistent with Howard and SSAR 04-1(9).

Defendant contends that substantial evidence supports the ALJ's decision. Under Howard, however, the ALJ's failure to make a reasonable effort to obtain a case evaluation based on the entire record from a pediatrician or other appropriate specialist is not harmless even if the ALJ's "own case evaluation" is based

on substantial evidence. Howard, 341 F.3d at 1014. Therefore, even though the ALJ in this instance cited and relied on numerous individual examination reports, including speech and language evaluations by Ms. Campbell, Jose Fuentes, Ph.D, and Lisa Lucifora, M.S., the ALJ's reliance on those reports did not discharge her obligation to obtain a case evaluation by a qualified specialist. Howard, 341 F.3d at 1014 (holding that the ALJ erred in failing to have the claimant's case evaluated as a whole and relying instead on the individual reports of various specialists pertaining to their individual specialties, including "a developmental psychologist, a neuropsychology fellow, a licensed psychologist, a school psychologist, a registered occupational therapist, a speech/language therapist, a school psychometrist, a speech/language pathologist, a child neurologist, a child and adolescent psychiatrist, and a pediatric cardiologist"); see Martinez v. Comm'r of Soc. Sec., 2014 WL 2606150, at *3 (C.D. Cal. June 11, 2014) ("As thorough as the ALJ's decision was and although it appears to have been supported by substantial evidence, remand is necessary because the ALJ erred by failing to secure a complete case evaluation from an appropriate specialist based on the record in its entirety.") (citing Vega ex rel. J.G. v. Astrue, 2012 WL 1144407, at *5 (C.D. Cal. Apr. 2, 2012) (remanding for compliance with Howard even though substantial evidence supported ALJ's decision)); Willmett ex rel. A.P. v. Astrue, 2011 WL 3816284, at *4 (E.D. Cal. Aug. 25, 2011) (noting that the ALJ never mentioned Howard or SSAR 04–1(9) in his decision, and remanding because, among other reasons, the state agency medical consultants could not have considered all of the record evidence).

On remand, the Commissioner shall direct the ALJ to fully develop the record in compliance with Howard and SSAR 04-1(9) and to issue a new hearing decision containing appropriate findings.

**Conclusion**

For the reasons stated above, the Commissioner's decision is legally erroneous. Accordingly, defendant's decision is reversed, and the case is remanded for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

February 22, 2017



_____
ANDREW J. WISTRICH
United States Magistrate Judge